UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cr-20326-BLOOM

UNITED STATES OF AMERICA,

v.

KEENAN JOHNSON,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS INDICTMENT WITH PREJUDICE**

**THIS CAUSE** is before the Court on Defendant Keenan Johnson's Motion to Dismiss the Indictment with Prejudice Based on Prosecutor's Knowing Elicitation of False Testimony from a Material Witness at Trial. ECF No. [85]. The United States of America (the "Government") filed a Response in Opposition, ECF No. [87], to which Johnson filed a Reply, ECF No. [89]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.    FACTUAL BACKGROUND**

Defendant Keenan Johnson, a detective with the Miami Dade Police Department, was charged by Indictment with four counts of perjury and one count of obstruction of justice for allegedly false statements made during a *Franks* hearing before Chief United States District Judge Cecilia Altonaga in March and April 2022 in the matter of *United States v. Eugene Jones*, 1:21-cr-20530. ECF No. [44]; *see also* ECF No. [3]. The Government asserts that at the *Franks* hearing in the *Jones* case, Jones' lawyer sought to challenge the search warrant authored by Keenan Johnson, arguing the warrant application contained false information and omissions. During the hearing, Jessica Witt, a witness and the primary victim of Jones' alleged shooting, testified regarding her interactions with Johnson, "including those over Johnson's telephone number, 786-

530-8005." ECF No. [44]. Johnson subsequently testified at the hearing and was questioned about the telephone number. However, Johnson "denied he had such a number, or had had contact with Jessica Witt over the number." *Id.* at 2.

At the conclusion of the hearing, Judge Altonaga "stated that she found the matter of the telephone number concerning," and therefore, the AUSA responsible for prosecuting the case needed to answer additional questions before she would issue a decision on the motion to suppress. *Id.* The Government subsequently dismissed the case against Eugene Jones and brought the instant criminal action against Johnson, charging him with four counts of perjury and one count of obstruction of justice based on the testimony Johnson provided during the *Franks* hearing.

The jury trial in this case began on June 10, 2025, and continued until June 12, 2025. During the three days of trial, a number of Government witnesses testified, including Assistant United States Attorney Yara Dodin and Jessica Witt. AUSA Dodin was the lead attorney in the Eugene Jones case. Jessica Witt was the victim of the shooting that triggered the investigation into Eugene Jones.

Due to scheduling conflicts, the Court continued the trial until July 8, 2025. ECF No. [81]. While the case was recessed, Defendant Johnson filed the instant Motion to Dismiss the Indictment based on the Government's purported prosecutorial misconduct. ECF No. [85]. According to Johnson, the Government attempted to elicit false testimony from material witness, Jessica Witt, about whether she knew if Eugene Jones shot her. *See id.* at 7. Because the Government knew that Jones did not shoot her, Johnson argues that eliciting testimony to the contrary was such egregious misconduct that the only appropriate sanction is dismissal of the Indictment with prejudice. *See id.* at 8.

The Government maintains that Johnson misconstrues the record, and AUSA Boggs did

not elicit false testimony in this case, and in any event, the testimony at issue involved a collateral matter. ECF No. [87] at 2. Moreover, to the extent that Witt gave untruthful testimony as to her knowledge about the shooter, the Government argues that the testimony goes to Witt's credibility and therefore should be determined by the jury. *Id.* at 2-3.

## II. LEGAL STANDARD

### A. Motion to Dismiss Indictment

A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, constitutional reasons or prosecutorial misconduct. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012); Fed. R. Crim. P. 12(b). On a motion to dismiss the indictment, "[t]he indictment's allegations are assumed to be true and are viewed in the light most favorable to the government." *United States v. Rodriguez*, 635 F. Supp. 3d 1351, 1354-55 (S.D. Fla. 2022). "[A] court ruling on a motion to dismiss may not look beyond the four corners of the indictment, nor may it properly dismiss an indictment for insufficient evidence." *United States v. Baxter*, 579 F. App'x 703, 706 (11th Cir. 2014). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (citations omitted).

"[D]ismissal of an indictment for prosecutorial misconduct is discretionary; however, dismissal "is an extreme sanction which should be infrequently utilized." *United States v. Goldstein*, 989 F.3d 1178, 1204 (11th Cir. 2021); *see United States v. Jordan*, 316 F.3d 1215, 1249 n.68 (11th Cir. 2003) ("The dismissal of an indictment on the ground of prosecutorial misconduct is a discretionary call"). Accordingly, to warrant dismissal, the defendant must show "'flagrant prosecutorial abuse' of the criminal justice system" and a "sufficient showing of prejudice." *United*

*States v. White*, 846 F.2d 678, 693 (11th Cir. 1988) (quoting *United States v. Hyder*, 732 F.2d 841, 845 (11th Cir. 1984)); *United States v. Accetturo*, 858 F.2d 679, 681 (11th Cir. 1988).

"To establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Ostrander*, 114 F. 4th 1348, 1369 (11th Cir. 2024) (quoting *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010) (internal quotations omitted)). "It is immaterial whether or not the prosecution consciously solicited the false evidence." *United States v. Barham*, 595 F.2d 231, 241 (5th Cir. 1979). "The materiality element is satisfied 'if there is a reasonable likelihood the false testimony could have affected the judgment of the jury.'" *Ostrander*, 114 F. 4th at 1369 (quoting *Barham*, 595 F.2d at 241).

However, to dismiss an indictment, the misconduct must amount to "prejudice that dismissal will remedy." *United States v. Shelley*, 405 F.3d 1195, 1208 n.7 (11th Cir. 2005) (Tjoflat J., concurring). "If prosecutorial misconduct occurs during trial, a court must consider whether the misconduct has prejudiced the defendant's right to a fair trial. If it has, and if the prejudice cannot be remedied by a curative instruction, the court should [generally] declare a mistrial," not dismiss the indictment. *Id.* "Dismissing the indictment only makes sense if the prosecutorial misconduct has somehow infected the indictment itself rather than [ ] the trial" and only in the most egregious cases. *Id*;[1] *United States v. Michael*, 17 F.3d 1383, 1386 (11th Cir. 1994).

---

[1] The Eleventh Circuit in *Shelley* explained that, given the unlikelihood that prosecutorial misconduct during the trial would ultimately taint the indictment itself, most cases dealing with dismissal of an indictment for prosecutorial misconduct involve grand jury proceedings. *See Shelley*, 405 F.3d at 1208 n.7.

### III.   DISCUSSION

Johnson argues that dismissal of the Indictment is appropriate because the Government knowingly elicited false testimony during the prosecutor's direct and redirect examination of material witness, Jessica Witt, in the ongoing trial. ECF No. [85] at 1. To demonstrate that the Government knew Witt's testimony was false, Johnson first points to the Government's response to the motion to suppress evidence filed in the *Eugene Jones* case where AUSA Dodin "wrote that Witt did not witness the shooting."[2] *Id.* at 2. Not only did the Government assert that Witt did not witness the shooting in its brief, but Dodin also maintained that position when the *Jones* case was dismissed. As further proof of Witt's lack of knowledge, Johnson relies on the recording of Witt at the hospital after the shooting, where she stated that "As I got to 26th Avenue, my friend drop - drop the rest of the way, and I got out, and then I woke up here." *See id.* at 3 (quoting *United States v. Eugene Jones*, case no. 21-cr-20530, ECF No. [57] at 44 (emphasis removed). Additionally, when the Government called AUSA Dodin to testify in this case, "she reaffirmed that her review of the video taken at the hospital indicated that Witt 'had no idea who shot her.'" *Id.* (quoting ECF No. [80] at 6). Given this record, Johnson argues Witt clearly did not know who shot her, and the Government was aware Witt did not know her assailant.

According to Johnson, AUSA Boggs nevertheless decided to elicit perjurious testimony from Witt at trial by asking, "Did Eugene Jones shoot you? To which Witt answered, "No, he did not." ECF No. [85] at 3 (quoting ECF No. [81] at 15). Johnson claims Boggs then followed up by asking Witt if she had ever testified as such in a court proceeding, to which Witt responded that

---

[2] Johnson quotes directly from the Government's response, which states that "Witt did not remember the shooting at all. To the contrary, she stated she only remembers being at the defendant's house after being dropped off by her friend and then remembers waking up at the hospital." ECF No. [85] at 2 (quoting *United States v. Eugene Jones*, case no. 21-cr-20530, ECF No. [36] at 10.

5

she had. Then, on redirect, the following exchange occurred between Witt and AUSA Boggs:

> Boggs: Were you upset that Detective Johnson was focused on Eugene Jones—focused on Eugene Jones as the shooter?
>
> Witt: I was aggravated a little because I knew what it was. I knew it was not him, and I wish he would have did a better job investigating. If I'm the victim, and you supposed to come in see what's happening with me, you supposed to take my word and go and figure it out – because maybe he could have got the right person and we wouldn't be sitting her
> . . .
>
> Boggs: I would just like to ask you one last question. When you said or wrote: "He would never" about Eugene Jones, what did you mean?
>
> Witt: That Mr. Jones would never – like, if y'all know—that man love me. That man love my kids. I mean, like we deep. We deep in. Like, I -- but I don't love him enough to lie for him. Like, I don't love him enough to lie about that. Like, I died, y'all. I died. Four blood transfusions. I died. My main artery ruptured out of my – I died. I'm not going to protect somebody that murdered me—and so help me, God brung me back – never.

Johnson contends that since the Government has always known and maintained that Witt did not witness the shooting, the Government knew that Witt's testimony at trial was false. Consequently, the Government had an obligation to correct Witt's clearly erroneous testimony, or at the very least, once the Government was aware of the false testimony, the Government should not have continued to highlight Witt's perjury by "repeatedly eliciting it during Witt's direct and redirect examinations." ECF No. [85] at 7. Johnson maintains that this conduct amounts to prosecutorial misconduct. Moreover, because Witt is a material witness and the credibility of her testimony is critical to this case, Johnson argues that "the jury could now base its verdict in part on crediting the false statements" which "could reasonably be taken to put the whole case in such a different light as to undermine confidence in [any] verdict." *Id.* at 8. Consequently, Johnson claims the prosecutorial misconduct has materially prejudiced his case and, therefore, the Court should dismiss the Indictment with prejudice.

The Government responds that Johnson relies on "a handful of faulty premises" to reach an incorrect conclusion that "the prosecution knows who shot Jessica Witt, that a shooting victim's incomplete memory of being shot in the face renders her someone who 'did not witness the incident in which she was shot,' and that a lawyer's theories and arguments equal facts." ECF No. [87] at 2. Furthermore, the Government argues that Witt never provided false testimony during trial as [s]he clarified during [direct] and under aggressive cross-examination that she does not believe that Eugene Jones shot her, and she never has. *Id.* at 2.

The Court finds that the Government did not clearly and knowingly elicit perjured testimony. Moreover, even if Witt's testimony was false, Johnson has failed to show how the allegedly perjured testimony infected the Indictment in any material way.

Johnson insists Witt's testimony that Jones did not shoot her constitutes perjury because Witt had previously admitted that she did not know who shot her. However, Witt's testimony that Jones did not shoot her is not necessarily intentionally false, even if inconsistent with other statements Witt previously made in the *Jones* case. Johnson omits the fact that when asked at the hospital whether Eugene Jones shot her, Witt responded by stating that "He [Jones] would never."[3] Johnson also ignores the text messages Witt repeatedly sent to him, claiming Johnson was investigating the wrong person. Therefore, Witt has maintained from her time at the hospital until her testimony on July 12, 2025, that she did not believe Jones shot her. The fact that Witt does not know who the shooter was does not necessarily undermine her testimony that she believed Jones was not the shooter and, therefore, her statements at trial do not clearly amount to perjury. *See United States v. McNair*, 605 F.3d 1152, 1209 (11th Cir. 2010) ("Perjury is defined as testimony

---

[3] Indeed, Johnson's attorney acknowledged Witt's hospital statement during the cross-examination of AUSA Dodin. ECF No. [80] at 6-7.

'given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory.'") (quoting *United States v. Ellisor*, 522 F.3d 1255, 1277 n.34 (11th Cir. 2008)).

While the credibility of Witt's testimony that Jones was not the shooter may be in doubt, given the fact that there is evidence indicating she did not remember the shooting, inconsistencies in Witt's testimony are the proper subject of cross-examination and are not a basis for a motion to dismiss the Indictment for prosecutorial misconduct. *See McNair*, 606 F.3d at 1208 ("[A] prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct."); *Overdear v. United States*, 212 F. App'x 930, 931 (11th Cir. 2006) ("However, '[a] mere claim that a witness gave inconsistent testimony is not enough to charge the prosecution's knowing use of false testimony; it may well be that the witness' subsequent statements were true, in which event the claim of inconsistency is not a constitutional objection.'") (quoting *Price v. Johnston*, 334 U.S. 266, 288 (1948), *overruled on other grounds by McCleskey v. Zant*, 499 U.S. 467 (1991)); ); *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) ("[D]ue process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements."). Johnson's attorney thoroughly cross-examined Witt and impeached her testimony regarding the alleged inconsistencies in her prior statements. Therefore, to suggest that Johnson was prejudiced by this testimony is questionable at best. *See McNair*, 605 F.3d at 1211 (finding alleged prosecutorial misconduct did not undermine the verdict where witness was thoroughly and exhaustively cross-examined on the issue and the "jury had the information it needed to make an informed decision as to [the witness's] credibility.") (citing *United States v. Calderon*, 127 F.3d 1314, 1315 (11th Cir. 1997) ("[C]redibility determinations are the exclusive

province of the jury.")); *United States v. Garante-Vergara*, 942 F.2d 1543, 1550 (11th Cir. 1991) ("The defendant must show unfair or actual prejudice[ ]" to dismiss for prosecutorial misconduct); *United State v. Deluca*, No. 6:11–cr–221, 2014 WL 3341345, at *7-9 (M.D. Fla. July 8, 2014) (noting that dismissal of an indictment requires a showing of prejudice).

Furthermore, Johnson has failed to sufficiently establish that Witt's testimony is material to the instant perjury proceedings. For false testimony leading to a witness's credibility to be sufficiently material as to amount to prosecutorial misconduct, there must be a showing that "the estimate of the truthfulness and reliability of the given witness may well be determinative of guilt or innocence." *United States v. Cole*, 755 F.2d 748, 763 (11th Cir. 1985). Johnson claims that "Witt's testimony was critical to show that she contacted Johnson via telephone calls and text messages using the telephone number ending in 8005[.]" ECF No. [85] at 6. However, after ignoring Witt's testimony, there is more than sufficient evidence in the record that Witt contacted Johnson via the telephone number ending in 8005, given the text messages, phone records, and testimony of other Government witnesses. Indeed, Johnson has not seriously disputed this fact at trial.

Johnson also argues that Witt's testimony is material because her false statement exculpating Jones of the shooting was material [to the *Jones* case] and [therefore suggests the statement] should have been included by Johnson in the affidavit he drafted[,] and the state court judge relied upon to issue the search warrant for Jones' car." ECF No. [89] at 4-5. However, the relevant inquiry in the instant perjury case is whether Johnson's testimony at the *Franks* hearing that he did not speak to Witt again after he spoke to her at the hospital constitutes a materially false statement under oath. *See* ECF No. [3]. The reason Johnson's allegedly false statements would be material is that the statements undermine the credibility of the rest of Johnson's testimony and thus

9

the credibility of his assertions in the warrant affidavit itself. Therefore, the content of their conversations is ultimately an immaterial collateral issue in this case. The mere fact that Johnson spoke to Witt after their interaction at the hospital would not affect the Magistrate Judge's probable cause determination given that their interactions did not make it any more or less likely that Johnson had probable cause to search Jones' vehicle. Accordingly, the validity of Witt's claim that Jones did not shoot her is not material to determining whether Johnson committed perjury.

As such, none of Witt's testimony is material, given that an unfavorable credibility determination as to Witt would ultimately not affect the verdict in this case.

Moreover, even assuming Witt gave materially false testimony that prejudiced the trial, Johnson has failed to show how such testimony tainted the Indictment itself. *See Shelley*, 405 F.3d at 1208 n7; *see also United States v. Sims.*, 845 F.2d 1564, 1569 (11th Cir. 1988) (explaining that the general rule is that "remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests") (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981) (internal quotation omitted)). Although a witness's false testimony may undermine the integrity of the trial, Johnson cites no case law in which perjured trial testimony undermined the integrity of the indictment. *See United States v. Esformes*, 60 F.4th 621, 633 (11th Cir. 2023) ("[P]rejudice that can warrant a dismissal of indictment must be 'demonstrable,' not presumed based on a constitutional violation."). Therefore, because Johnson fails to establish that sanctions are warranted, or if they were, that dismissal of the Indictment is the appropriate sanction, Johnson's Motion is denied.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that

1. Defendant Keenan Johnson's Motion to Dismiss the Indictment, **ECF No. [85]**, is

Case No. 24-cr-20326-BLOOM

**DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 7, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of record