## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 24-cr-20326-BLOOM

UNITED STATES OF AMERICA,

v.

KEENAN JOHNSON,

      Defendant.

_____/

## ORDER ON MOTIONS FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL

**THIS CAUSE** is before the Court on Defendant Keenan Johnson's Motion for Judgment of Acquittal After Jury Verdict ("Motion for Judgment of Acquittal"), ECF No. [106], and Motion to Vacate Judgments and Grant a New Trial ("Motion for New Trial"). ECF No. [107]. The United States of America ("Government") filed an Omnibus Response in Opposition, ECF No. [109], to which Johnson filed Replies, ECF Nos. [112], [113]. The Court has carefully reviewed the Motions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion for Judgment of Acquittal is granted in part and denied in part, and the Motion for New Trial is denied.

### I. FACTUAL BACKGROUND

Defendant Keenan Johnson served as a detective with the Miami Dade Police Department. Johnson was charged by Indictment with four counts of perjury and one count of obstruction of justice for false statements made during a *Franks* hearing before Chief United States District Judge Cecilia Altonaga in March and April 2022 in the matter of *United States v. Eugene Jones*, 1:21-cr-20530 (the "*Jones* case"). ECF No. [44]; *see also* ECF No. [3]. During the *Franks* hearing, Jones' lawyer sought to challenge the search warrant authored by Keenan Johnson, arguing the

warrant affidavit contained false information and omissions. To support his motion, Jones called Jessica Witt, a witness and the primary victim of Jones' alleged shooting, to testify regarding her interactions with Johnson, "including those over Johnson's telephone number, 786-530-8005." ECF No. [44]. Johnson testified at the hearing about the warrant affidavit he submitted and was also questioned about the 8005 number. Johnson "denied he had such a number, or had had contact with Jessica Witt over the number." *Id.* at 2.

At the conclusion of the hearing, Judge Altonaga stated that she found "the matter of the telephone number concerning" and, therefore, the AUSA responsible for prosecuting the case needed to answer additional questions before she would issue a decision on Jones' motion to suppress. *Id.* The Government thereafter dismissed the case against Eugene Jones and brought the instant criminal action against Johnson, charging him with four counts of perjury and one count of obstruction of justice based on the testimony Johnson provided during the *Franks* hearing in the *Jones* case.

The jury trial in this case began on June 10, 2025, and continued until June 12, 2025. Due to scheduling conflicts, the Court continued the trial until July 8, 2025. During the trial, several Government witnesses testified, including Assistant United States Attorney ("AUSA") Yara Dodin, Special Agent James Kaelin (the case agent), and Jessica Witt. AUSA Dodin was the lead attorney in the *Jones* case, and Jessica Witt was the victim of the shooting that triggered the investigation into Eugene Jones.

On July 9, 2025, the jury rendered a verdict finding Johnson guilty of Counts II, III, and IV (i.e., three of the four perjury counts), but not guilty of Count I (perjury) and Count V (obstruction of justice). ECF No. [103]. On July 17, 2025, Johnson filed the instant Motion for Judgment of Acquittal and Motion for New Trial. ECF No. [106], ECF No. [107]. Johnson's

Motions seek a judgment of acquittal on Counts II, III, and IV, or, alternatively, a new trial. The Government opposes both motions, arguing that there was sufficient evidence to support all three counts and that no error occurred, warranting a new trial. *See* ECF No. [109].

## II.   LEGAL STANDARD

### A.   Motion For Judgment of Acquittal

Under Rule 29(c) of the Federal Rules of Criminal Procedure, a defendant may move for a judgment of acquittal after a jury verdict or discharge. The following procedures govern under Rule 29:

> (1) Time for a Motion. A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

> (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

> (3) No Prior Motion Required. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

Fed. R. Crim. P. 29(c).

When deciding a motion under Rule 29, the district court must determine "whether the evidence, examined in the light most favorable to the Government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt." *United States v. Williams*, 390 F.3d 1319, 1323-24 (11th Cir. 2004) (citing *United States v. Varkonyi*, 611 F.2d 84, 85-86 (5th Cir. 1980)). A court must "view the evidence in the light most favorable to the prosecution and draw all reasonable inferences and credibility choices in favor of the jury verdict[.]" *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 20013) (citing *United States v. Tampas*, 493 F.3d 1291, 1297-98 (11th Cir. 2007)). Thus, the test is whether a reasonable jury

could find, beyond a reasonable doubt, that the defendant is guilty of violating the statutes alleged in the indictment. *United States v. Macko*, 994 F.2d 1526, 1532 (11th Cir. 1993). When applying this test, "[a]ll credibility choices must be made in support of the jury's verdict." *Williams*, 390 F.3d at 1323 (citing *United States v. Gianni*, 678 F.2d 956, 958-59 (11th Cir. 1982) and *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979)).

Because a jury "is free to choose among reasonable constructions of the evidence . . . [i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Williams*, 390 F.3d at 1323-24 (quoting *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990); *see United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983)). "A conviction must be affirmed unless there is no reasonable construction of the evidence from which the jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Ignasiak*, 667 F.3d 1217, 1227 (11th Cir. 2012) (citation omitted).

### B.  Motion for New Trial

Federal Rule of Criminal Procedure 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "When considering a motion for a new trial, the district court may weigh the evidence and consider the credibility of the witnesses." *United States v. Brown*, 934 F.3d 1278, 1297 (11th Cir. 2019) (quoting *United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015)); *see also United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985) (explaining that when a motion for new trial is based on claims that the verdict is contrary to the weight of the evidence, "the court need not view the evidence in the light most favorable to the verdict" but "may weigh

the evidence and consider the credibility of the witnesses.") (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980) and *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980)). "A motion for a new trial based on the weight of the evidence is 'not favored' and is reserved for 'really exceptional cases." *Brown*, 934 F.3d at 1297 (quoting *Martinez*, 763 F.2d at 1313). "The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Martinez*, 763 F.2d at 1312-13. "[T]o warrant a new trial, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Witt*, 43 F.4th 1188, 1194 (11th Cir. 2022).

In addition to motions for a new trial based on the weight of the evidence, a party may also seek a new trial based on trial errors. "Where a motion for new trial is based on a claim of erroneously admitted evidence, the movant must show that an objection was properly preserved, the court abused its discretion in admitting or rejecting the evidence, and the error affected the movant's substantial rights." *Banks v. MarketSource, Inc.*, No. 1:18-CV-2235-JSA, 2023 WL 3215649, at *6 (N.D. Ga. Mar. 30, 2023) (citing *United States v. Stephens*, 365 F.3d 967, 974 (11th Cir. 2004)). When evaluating whether a trial error warrants a new trial, courts apply the harmless-error standard. *See Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 807 (11th Cir. 2017). "Under that standard, evidentiary or other trial errors warrant a new trial 'only where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's "substantial rights" or resulted in "substantial injustice")." *Bryant v. Sheriff, Saint Lucie Cnty., Fla.*, No. 23-12334, 2024 WL 4458382, at *2 (11th Cir. Oct. 10, 2024) (quoting *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004)).[1]  Thus, the inquiry for a motion

---

[1] *See also Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory*

for new trial based on an error in the admission of evidence "is always directed to the same central question—how much of an effect did the improperly admitted or excluded evidence have on the verdict?" *Peat, Inc.*, 378 F.3d at 1162.

No matter the nature of the motion, however, a new trial should be granted only "when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Brown v. Sheriff of Orange Cnty., Fla.*, 604 F. App'x 915 (11th Cir. 2015) (per curiam) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)). "[G]ranting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before [her] . . .." *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 237 F. App'x. 423, 424 (11th Cir. 2007) (quoting *Christopher v. Florida*, 449 F.3d 1360, 1366 n. 4 (11th Cir. 2006)). Accordingly, "motions for a new trial are committed to the discretion of the trial court." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999).

## III.   DISCUSSION

### A.  Motion for Judgment of Acquittal

Johnson argues that a judgment of acquittal is appropriate as to Counts II, III, and IV because his statements were neither false nor material to the *Franks* hearing in the *Jones* case. *See* ECF No. [106].

---

*of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, the Ecumenical Ord.*, 702 F.3d 1279, 1295 (11th Cir. 2012) ("An evidentiary error is harmless if 'sufficient evidence uninfected by any error supports the verdict, and the error did not have substantial influence on the outcome of the case.'") (quoting *United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007)).

### a.  Materiality of Johnson's Statements

Johnson points out that for a false statement to constitute perjury, it must be material to the proceedings, and "[w]here a defendant challenges a search warrant on the basis that information was omitted from an affidavit, he must show the omitted information was critical to the probable cause determination." ECF No. [106] at 3 (quoting *United States v. Baiyewu*, Crim. No. 21-395 (RAM), 2024 WL 5236241, at *7 (D.P.R. Dec. 27, 2024)). Johnson contends that it is undisputed "that the issue before Judge Altonaga at the Jones suppression hearing was whether Johnson's failure to include Jessica Witt's [ ] statement that she did not recall who shot her" in his affidavit "would negate the state court judge's finding of probable cause and invalidate the search warrant that was executed on Jones' car." *Id.* at 3. Given that the focus of the hearing centered around the veracity of the warrant affidavit, Johnson argues the Government's failure to introduce the affidavit during the trial prevented the jury from determining whether Johnson's false statements were material to the ultimate validity of the affidavit. *See id.*

Furthermore, even if evidence concerning the affidavit had been admitted, Johnson points to AUSA Dodin's testimony that "Johnson's answers concerning the 8005 number, even if untrue, were unimportant and not material to the issues that [Judge Altonaga] had to decide." *Id.* at 4. Johnson contends that not only does Dodin's testimony establish that his statements were not material, but the Government also failed to provide any evidence demonstrating that Johnson's false statements were capable of influencing Judge Altonaga's ultimate decision regarding the sufficiency of the affidavit. Because Johnson's statements were not directly related to the validity of the warrant affidavit, Johnson maintains that his allegedly perjurious statements at the *Franks* hearing cannot reasonably be deemed material.

The Government agrees that a "material fact is an important fact—not some unimportant

or trivial detail," but argues that Johnson's lies about his phone number were important. ECF No. [109] at 2. The Government points out that Johnson was a police officer and the Government's sole witness at the *Franks* hearing. In addition, "his lies about the telephone number that he used for police (and nonpolice) business, and gave to witness and shooting victim Jessica Witt, and the contact he had over that telephone number with that witness Jessica Witt (but that he denied under oath) squarely meet the definition of materiality given to the jury." *Id.* at 2-3. The Government contends that "[l]ying about contact with a victim and witness of the crime [Johnson] was investigating and about use of a telephone for police business was material in the suppression hearing in which [Johnson] testified under oath." *Id.* at 3. Accordingly, the Government argues that the Court should not dismiss Johnson's convictions based on lack of materiality.

"A statement under oath constitutes perjury if it is false, known to be so[,] and *material* to the proceeding." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345-46 (S.D. Fla. 2010) (citing 18 U.S.C. § 1623). "A statement is material if it is capable of influencing the grand jury's investigation" or "the tribunal on the issue before it." *United States v. Swindall*, 971 F.2d 1531, 1554-55 (11th Cir. 1992) (internal quotations and citations omitted); *United States v. Dickenson*, 403 F. App'x 354, 357-58 (11th Cir. 2010). "The case law has established very broad parameters [for] what is considered material and essentially anything that could influence or mislead the trial court or the jury is considered to be material." *United States v. Whimpy*, 531 F.2d 768, 770 (5th Cir. 1976). Moreover, "[t]he statements need not be material to a particular issue, but may be material to collateral matters that might influence the outcome of decisions[.]" *United States v. Cosby*, 601 F.2d 754, 757 (5th Cir. 1979) (citing *United States v. Cuesta*, 597 F.2d 903, 920 (5th Cir. 1979); *United States v. Damato*, 554 F.2d 1371 (5th Cir. 1977); *Whimpy*, 531 F.2d at 770).

The proceeding during which the Defendant's false statements were made was a *Franks*

hearing. "Under the *Franks* doctrine, 'a warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit.'" *United States v. Valetine*, 347 F.R.D. 658, 660 (M.D. Fla. 2024) (quoting *United States v. Taylor*, No. 14-0303-CG, 2015 WL 5923580, at *2 (S.D. Ala. Oct. 12, 2015)). During a *Franks* hearing, the "defendant has the burden to present evidence of intentional or reckless omissions of material information from the affidavit" and, therefore, the truthfulness and credibility of the affiant is of critical importance. *Id.* at 661. In the *Jones* case, Johnson was the affiant who applied for the warrant in question. Accordingly, as the sole witness for the Government, Johnson's statements were material to the *Franks* hearing because his false statements had the potential to undermine the credibility of the rest of his testimony and thus the credibility of his assertions in the warrant affidavit. If Judge Altonaga were to find Johnson was not credible, she could have rejected Johnson's testimony that he did not intentionally omit the alleged material missing information from the warrant affidavit. Indeed, Judge Altonaga's statements during the *Franks* hearing highlight the significance of Johnson's testimony. Because Johnson's credibility was a critical issue, Judge Altonaga decided she would wait to issue a ruling on the motion to suppress until the AUSA prosecuting the *Jones* case answered additional questions about the 8005 number. The Defendant's argument that Johnson's misrepresentations about the phone number did not have the capacity to influence the Court's decision-making process is contrary to Judge Altonaga's statements and the record presented to the jury.

Although Johnson's testimony about the 8005 number did not bear directly on the issue of whether the warrant affidavit contained intentional omission or inaccuracies, that does not alter the Court's conclusion that Johnson's false statements were material. As binding precedent in this Circuit has made clear, the alleged perjurious "statements need not be material to a particular issue,

but may be material to collateral matters that might influence the outcome of decisions[.]" *Cosby*, 601 F.2d at 757. Because Johnson's statements could have reasonably impacted Judge Altonaga's decision to suppress the evidence in question, the Government carried it burden to establish materiality.

The Court is also unconvinced that the Government's failure to introduce the warrant affidavit into evidence precluded the jury from finding that Johnson's statements during the *Franks* hearing were material. The reason Johnson's statements could reasonably be found to be material is because the statements impacted, or had the potential to impact, Judge Altonaga's credibility determination. Therefore, the jury was not tasked with deciding whether Johnson's statements about the 8005 number would have directly impacted the validity of the warrant affidavit. Accordingly, the jury did not need to consider the warrant affidavit to make a materiality finding. Consequently, the Court finds that the Government provided sufficient evidence for a jury to find beyond a reasonable doubt that Johnson's statements during the *Franks* hearing were material.

### b. Falsity of Johnson's Statements

### i. Count II

Johnson also argues that a judgment of acquittal is warranted because his statements during the *Franks* hearing were not, in fact, false. With respect to Count II, Johnson acknowledges that the following question and answer formed the basis for that offense:

> Q: So do you assist in generating this flyer in any way?

> A: No. The only thing we're required to do is provide a picture, which is what you see, we e-mail it, and they create the flyer.

Johnson emphasizes that he was "asked if he assisted in generating the flyer ***in any way***" *Id.* at 10 (emphasis in the original). According to Johnson, he truthfully answered the question by responding that "he provided a picture." *Id.* at 10. Earlier in the hearing, Johnson contends he also

acknowledged that he assisted in the generation of the flyers by providing the Crime Analysis Unit with the police station address. As acknowledged by Government witnesses, Patrina Mobley and Marsha Pressley, providing a picture of a suspect and the station address are indeed two ways detectives assist with creating the flyers in question. *See id.* at 10-11. Therefore, Johnson maintains that the statements he made regarding his participation in making the flyers, while incomplete, were not false.

Johnson acknowledges that he stated only one of the multiple ways in which he assisted in generating the flyers but contends that the question he was asked during the hearing was too open-ended and imprecise to render his response to the question perjurious. Johnson argues that if he had been asked a clearer question, such as "detail all the ways [you] assisted in generating the flyers, his answer of only a picture would have been incomplete and arguably false." *Id.* at 11 (emphasis removed). However, because he was simply asked, did "you assist in generating this flyer in any way," he did not provide a false statement by stating only one of multiple ways in which he assisted in the flyer's creation.

The Government does not directly address Johnson's falsity argument and instead simply contends that the Government proffered sufficient evidence establishing that Johnson's statements were lies. *See* ECF No. [109] at 3.

The Court finds that the Government failed to sufficiently establish the falsity of Johnson's statement in Count II, such that a reasonable jury could find him guilty of perjury beyond a reasonable doubt. [T]he federal perjury statute [ ] is not violated when a witness gives an evasive, nonresponsive but literally true answer, even if the answer is intentionally misleading and arguably false by negative implication."[2] *United States v. Abrams*, 568 F.2d 411, 422 (5th Cir. 1978) (citing

---

[2] Although the Supreme Court in *Bronston* was construing 18 U.S.C. § 1621, the *Abrams* court extended

*Bronston v. United States*, 409 U.S. 352, 360 (1973)). "[T]he perjury statute is not to be loosely construed, nor the statute imposed simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston*, 409 U.S. at 360.

Here, the Court finds that Johnson's response to the question "do you assist in generating this flyer in any way" was not literally false. As Johnson correctly points out, he responded, and the record supports, that providing a picture to the Crime Analysis Unit was one of the ways detectives in the department "assisted" in generating flyers. The fact that Johnson may have provided additional information for the flyers does not render his answer literally false, even if Johnson was intentionally misleading in failing to disclose his additional flyer duties. As the Supreme Court explained in *Bronston*, the onus is on the questioner to ask precise questions and pin the witness down. *See* 409 U.S. at 360. Were Johnson to have been asked to detail all the ways in which he assisted in generating the flyer, then his failure to disclose his other responsibilities would have rendered his incomplete and evasive answer false. However, because the question posed in Count II was open-ended, the Government cannot sustain the perjury charge. As such, Johnson's request for judgment of acquittal as to Count II is granted.

### ii.   Count III & Count IV

In Count III, the Indictment alleges that Johnson provided the following false statement in response to a question at the *Franks* hearing:

> Q. Okay. So, obviously, you were asked about the cell number down there, the XXX-XXX-8005 number, whose number is that, what is that number?
>
> A. I don't know.
>
> [W]hen in truth and in fact, as the defendant then and there well knew, the testimony

the perjury analysis to 18 U.S.C. § 1623. *See United States v. Abrams*, 568 F.2d 411, 422 (5th Cir. 1978).

of the defendant was false, as the telephone number was a number that he used for
police business.

As for Count IV, the Indictment alleges that Johnson gave the following false statement at
the *Franks* hearing:

Q. Why is that number on the flier?

A. I'm not sure.

[W]hen in truth and in fact, as the defendant then and there well knew, the testimony
of the defendant was false, as the telephone number was on the police flyer because
he had provided it to police department personnel for that purpose.

Although Johnson provided admittedly unresponsive or evasive answers in direct response

to the questions outlined in the Indictment, he contends that he "previously provided testimony

earlier during the suppression hearing[,] which truthfully answered" those questions. *Id.* at 106.

Johnson points specifically to his following testimony during the *Franks* hearing:

Q: And that's a need to identify flier on one of your past cases; right?

A: That is, yes.

Q: And in it, you have your name, Detective K. Johnson; right?

A: Yes.

Q: And your e-mail, U307502@MDPD.com?

A: Yes.

Q: And your office number of 305-835-4044?

A: Yes.

Q: And it has a cellular number of 786-530-8005; correct?

A: That is correct.

Q: And that's your work cell phone number?

A: I do not have a work cell phone number.

Q: But this is the cell phone number that's connected to your case by which someone can contact you; right?

A: Yeah, however, I do not—I tell you, I do not have a work cell phone number.

According to Johnson, because he acknowledged at least some connection to the 8005 number earlier in his testimony, he cannot be found guilty simply because he later gave unresponsive or arguably false answers later on in the hearing.

The Government does not directly address Johnson's argument that he previously provided truthful information about whether the 8005 number was his, but instead argues that the testimony of Jessica Witt, and other witnesses as well as the telephone record evidence clearly demonstrates that "defendant was deliberately and knowingly lying about his telephone number and his contact with Jessica Witt throughout the suppression hearing at issue." ECF No. [109] at 3.

The Court finds that, based on the evidence presented at trial, a reasonable jury could find that Johnson's statements in Count III and Count IV were indeed false. The evidence supports a finding that Johnson knew the 8005 number was the number he used for police business. Specifically, the evidence at trial reflected that: (1) the 8005 number was on Johnson's business card he handed out to victims, including Jessica Witt, (2) Johnson repeatedly used that telephone number for police business, and (3) shortly after the *Franks* hearing, Johnson deliberately changed his 8005 number. This evidence was more than sufficient for the jury to reasonably conclude that Johnson knew the 8005 number was the number he used for police business and that the number was on the flyer for people to contact Johnson about on-going investigations. Therefore, Johnson's responses that he did not know who the 8005 number belonged to, what the number was for, or why the number was on the flyer were false statements made under oath.

Unlike Count II, the questions asked of Johnson in Counts III and IV were precise and unambiguous. Johnson makes no serious arguments to the contrary. Johnson's only basis for

arguing that his answers in Counts III and IV were not false is that he previously acknowledged during the hearing that the 8005 number was a phone number by which someone could contact him about on-going cases. Johnson's acknowledgment that he could be reached at that number does not absolve his later false statements that he did not know who the number belonged to, what that number was, or why that number was on the flyer. Indeed, the mere fact that he could be reached at a particular phone number does not necessarily mean that Johnson owned the number, was the sole user of the number, contacted people with that number, or that he was capable of responding to messages with that number. Accordingly, Johnson's request for judgment of acquittal on Counts III and IV is denied.

### B.  Motion for New Trial

Johnson seeks a new trial on three separate grounds: (1) the erroneous admission of the statements Judge Altonaga's made concerning the 8005 number during the *Franks* hearing in the *Jones* case, (2) the improper limitations the Court imposed on the scope of defense counsel's cross examination of FBI Special Agent Kaelin, including the exclusion of certain email communications between Agent Kaelin and the AUSA assigned to the case, and (3) the prejudice of Jessica Witt's alleged perjury at trial.

### a.   Admission of Judge Altonaga's Statements Does Not Warrant a New Trial

Johnson argues that he was substantially prejudiced by the admission of the statements Judge Altonaga made during the *Franks* hearing in the *Jones* case. *See* ECF No. [107] at 2. Johnson points out that to prove perjury, the Government must show that the Defendant's statement was material. *Id.* at 3. Because the materiality inquiry is an objective analysis, Johson argues that Judge Altonaga's "subjective comments" were irrelevant and therefore inadmissible under Federal Rule of Evidence 403. *Id.*

Furthermore, Johnson argues that the Court should have excluded the statements based on the decision in *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). In that case, the district court found that the judge presiding over the proceedings where the alleged perjury took place could not testify at the perjury trial, as there was a substantial risk that the jury might give undue credence to the judge's testimony. *See Gonzalez*, 718 F. Supp. 2d at 1349. Johnson insists there is no discernible difference between Judge Altonaga testifying about her impressions of the case and the Government introducing a transcript that included the statements she made during the *Franks* hearing. According to Johnson, he suffered the same impermissible prejudice as the defendant in *Gonzalez* was set to face because, rather than the jury making their materiality finding based "solely on the testimonies of the witnesses and exhibits admitted at the suppression hearing on March 31, 2022 and April 4, 2022," the jury was impermissibly influenced by Judge Altonaga's subjective concerns about the 8005 number and her "orders directing the Government to investigate the matter before she issued her decision on the motion to suppress." *Id.* at 3-4. Johnson contends that, if anything, the admission of the transcripts, as opposed to the proposed in-person testimony in the *Gonzalez* case, caused even more prejudice to Johnson, as Judge Altonaga's absence from the trial deprived Johnson of "an opportunity to cross-examine Judge Altonaga about her subjective remarks." *Id.* at 3.

The Government responds that the statements of Judge Altonaga were properly admitted at trial because they provided the "necessary context to the statements made by [Johnson] at that hearing." ECF No. [109] at 3. According to the Government, it did not learn that Johnson had lied under oath until the Court ordered the Government during the suppression hearing to investigate Johnson's telephone number further. Accordingly, by removing any of Judge Altonaga's statements, the jury would be unable to appreciate the significance of Johnson's statements and

the materiality of those statements in the *Jones* case. *See id.* at 4-5.

The Court remains convinced that the admission of Judge Altonaga's statements was proper. It is well-established that "[i]n the usual perjury case, the Government meets its burden of proof either by entering the transcript of the prior proceedings into evidence, or by presenting testimony from persons who witnessed the proceedings." *United States v. Damato*, 554 F.2d 1371, 1373 (5th Cir. 1977). Accordingly, introducing the entire transcript, not just the portions of the transcript where the defendant testified, is generally not only relevant evidence but the preferred method of proving a perjury case. *United States v. Bell*, 623 F.2d 1132, 1134–35 (5th Cir. 1980) ("In prior decisions, this Court has suggested that the government may carry its burden by introducing the full transcript of the grand jury proceedings or by presenting testimony from anyone who witnessed the grand jury proceedings. . .. Although these are not the only methods by which the government may prove materiality, we have, by expressly disapproving of others, *see, e.g., Cosby*, 601 F.2d at 757-58, indicated that they are the preferred ones."); *see Damato*, 554 F.2d at 1373 (finding error in only introducing the portion of the testimony containing the defendant's testimony because doing so failed to provide the jury with the full factual basis for the charges); *United States v. Leon-Reyes*, 177 F.3d 816, 820 (9th Cir. 1999) ("[W]e have allowed the prosecution to prove materiality of a statement by introducing the complete transcript of the prior proceeding[.]") (citing *United States v. Dipp*, 581 F.2d 1323, 1328 (9th Cir. 1978)). The same holds true in this case. The entire transcript from the *Franks* hearing was relevant and necessary to provide the jury with the context in which Johnson's statements were made, the precise questions and answers given, and the resulting considerations by the presiding judge. Moreover, the jury was properly instructed to "consider the allegedly false testimony in the context of the series of questions asked and answers given. The words used should be given their common and

ordinary meaning unless the context clearly shows that both the questioner and the witness understood that a word or phrase has a different meaning." See ECF No. [100]. As such, the full transcript, including Judge Altonaga's statements, was relevant.

Moreover, while the standard for evaluating materiality is indeed an objective one, that does not necessarily mean that the underlying fact-finder's deliberative process is irrelevant to the jury's determination in the perjury trial. The jury in this case was tasked with determining whether Johnson's statements had "a natural tendency to influence, or w[ere] capable of influencing, the decision of the decision-making body (i.e., Judge Altonaga)[.]" *United States v. Gaudin*, 515 U.S. 506, 510 (1995 (quoting *Kungys v. United States*, 485 U.S. 759, 786 (1988); *see also United States v. Neder*, 197 F.3d 1122 (11th Cir. 1999); *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1346 (S.D. Fla. 2010) (quoting *United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir. 1998)). Understanding what was important or concerning to Judge Altonaga about Johnson's testimony was helpful to the jury as they decided whether a reasonable person in Judge Altonaga's shoes could have been influenced by Johnson's testimony in making his or her decision. *See Gonzalez*, 718 F. Supp. 2d at 1349 (finding that the judge's "testimony that the false statements were capable of influencing her is relevant"); *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1140-41 (9th Cir. 1999) (concluding that, where a judge had first-hand knowledge of matters in issue, his testimony was relevant and not improperly prejudicial). Accordingly, while the standard for materiality may be an objective one, that does not render all statements or testimony from the original fact-finder in the underlying proceeding irrelevant under Rule 403. *United States v. Johnson*, 25 F. App'x 231, 239 (6th Cir. 2001) ("[T]estimony by Judge Jarvis represented the most natural means of establishing the crucial facts as to materiality."); *see also United States v. Conley*, 186 F.3d 7, 16 (1st Cir. 1999) (finding the fact-finder's testimony was "clearly relevant to

materiality").

The Court also does not find the admission of Judge Altonaga's statements unduly prejudicial. Johnson attempts to analogize admitting portions of the transcript from the suppression hearing in this case to the district judge's[3] proposed live testimony in *United States v. Gonazlez*. However, the circumstances are clearly distinguishable, and as such, the *Gonzalez* decision does not dictate the outcome here. In *Gonzalez*, the district judge was anticipated to be called as a witness and testify as to the materiality of the defendant's statements and how the defendant's testimony did influence or could have influenced her decision-making process in the underlying proceedings. The court in *Gonzalez* found that the judge's anticipated in-person testimony was unduly prejudicial because the jury might give too much credence to her "testimony due to her position and stature as a Federal District Court Judge." 718 F. Supp. 2d at 1349. The same potential prejudice is not present here. Simply reading portions of a transcript where Judge Altonaga made a comment about Defendant's testimony does not pose the same risk as a judge giving testimony to a jury concerning a material element of an offense. A judge coming before a jury to give what appears to be an authoritative opinion on an issue certainly carries substantially more weight, dignity, and authority than reference in a transcript. Accordingly, the Court does not find that the probative value of Judge Altonaga's statements at the *Franks* hearing was substantially outweighed by the danger of unfair prejudice. As such, Johnson's first ground for a new trial is denied.

      **b.  Exclusion of the DOJ Emails and Limitations on Cross-Examination of Agent Kaelin Do Not Warrant a New Trial**

---

[3] Coincidentally, the trial judge in the underlying proceedings for *United States v. Gonzalez* was also Judge Altonaga. However, for the sake of clarity, the Court will only refer to Judge Altonaga by her name when the Court is talking about the instant case to avoid unnecessary confusion.

Johnson contends that the Court violated the Confrontation Clause of the Sixth Amendment by impermissibly restricting the scope of defense counsel's cross-examination of Special Agent James Kaelin. ECF No. [107] at 4-5. According to Johnson, during his direct examination, the Government elicited testimony from Agent Kaelin that he and AUSA Boggs had communicated with each other about their strategy in this case. *Id.* at 5. On cross-examination, defense counsel "attempted to question Kaelin about the email he received from Boggs dated January 31, 2024[,] and the actions [Kaelin] took as a result of that email." *Id.* During the cross-examination, defense counsel also sought to admit the subject email as well as an FBI 301 report authored by Kaelin. Ultimately, however, the Court denied Johnson's inquiry and excluded the proposed evidence.

Johnson argues there are three reasons the Court should have permitted defense counsel's inquiry and admitted the evidence. First, "the email constituted a party admission under Rule 801(d)(2). Second, the Government opened the door to the line of questioning "based on [Agent] Kaelin's direct testimony that he and Boggs conferred about strategy. Third, the anticipated testimony was not hearsay as it would not be offered for the truth of the matter asserted but rather "to show why Kaelin conducted the subsequent interview of Witt requested by Boggs." *Id.* at 5-6.

According to Johnson, the exclusion of this evidence not only deprived him of substantial Sixth Amendment rights but also prevented him from showing "that the Government had no theory or reason to explain why Johnson would have lied about the 8005 number." *Id.* at 6. Accordingly, Johnson was unable to show that he was indicted notwithstanding the fact that the Government could not show that Johnson made the false statements knowingly, as the Government had no evidence proving Johnson's bad intent.

The Government responds that "[t]he prosecutor's discussions about strategy with the lead investigator during the course of the investigation long before the case was indicted were not

relevant to the issues before the jury," and as such, the Court acted appropriately in curtailing defense counsel's cross-examination and excluding the communications on the matter. ECF No. [109] at 5.

Johnson fails to cite to any caselaw to support his contention that the Court's decision to exclude the email and accompanying questioning regarding the email violated the Confrontation Clause. Johnson had a full opportunity to cross-examine the agent about the steps he took during the investigation. *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) ("[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'") (quoting *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985)); *see also Delaware v. Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."). Precluding defense counsel from inquiring about a statement the prosecutor made during the investigation did not prevent Johnson from fully examining Agent Kaelin's potential bias or the reliability of his testimony. *See Arsdall*, 475 U.S. at 680. Accordingly, the Court declines to find that Johnson's Sixth Amendment rights were violated.

The Court also need not address the Rule 802(d)(2) issue or related non-hearsay arguments because, even assuming the evidence in question satisfies Rule 801(d)(2) or the statement sought would otherwise not amount to hearsay, the Court still finds that the proposed evidence is irrelevant.[4] Johnson contends the email from Boggs to Kaelin shows that "the Government had no

---

[4] The Court also does not find that the Government opened the door to the email simply because Agent Kaelin testified on direct examination that he and ASUA Boggs worked on the case together and conferred about strategy.

theory or reason to explain why Johnson would have lied about the 8005 number." ECF No. [107] at 5. But motive is not an element of perjury under 18 U.S.C. § 1623(a)[5] and, therefore, evidence that the Government did not have a theory for motive would not tend to make it more or less likely that Johnson had committed perjury. Moreover, the mere fact that the Government's attorney asked for further investigation on a particular issue during the investigation does not undermine the veracity of the evidence that was produced at trial. Indeed, Johnson does not contend that this was a vindictive or malicious prosecution, and as such, the Government's internal thoughts about the evidence has no bearing on the case. Therefore, because the email and the proposed line of questioning were not relevant, Johnson's second ground for a new trial is denied.

### c.   Jessica Witt's Alleged Perjury Does Not Warrant a New Trial

Johnson's final basis for a new trial is trial witness Jessica Witt's alleged perjury. Johnson maintains that during his trial, Jessica Witt knowingly made two materially false statements.

Regarding the first instance, Johnson points out that Yara Dodin testified that her review of a prior video interview of Jessica Witt "indicated that Witt 'had no idea who shot her[.]'" ECF No. [107] at 8 (quoting ECF No. [80] at 6). However, when Jessica Witt testified during the trial, she was asked, "Did Eugene Jones shoot you?" to which Witt responded, "No, he did not." *Id.* at 9 (quoting ECF No. [81] at 15). Johnson contends that Witt compounded this perjured statement by falsely stating that she had previously testified at the *Franks* hearing that Jones did not shoot her. *Id.* According to Johnson, Witt was not the sole bad actor. AUSA Boggs also knew Witt's statements were false and nevertheless decided to elicit the testimony and chose not to correct the

---

[5] "To sustain a conviction under section 1623(a), the government must prove beyond a reasonable doubt that the statement was (1) made under oath, (2) false, (3) material, and (4) made with knowledge of its falsity." *United States v. Dickerson*, 403 F. App'x 354, 357 (11th Cir. 2010)

false statements to "bolster Witt's credibility." *Id.*

The second perjured testimony involved similar issues to the first. During Witt's direct examination, Johnson contends that Witt committed perjury when she testified that, immediately before her recorded interview with Detective Johnson and Cruz, she was asked by Detective Johnson, "Did Eugene Jones shoot you?" to which Witt told him, "No." *Id.* at 10. Johnson argues Witt's testimony was clearly perjurious, given that Detective Daniel Cruz testified [ ] that Witt was never asked any questions before the recording because she could not talk." *Id.*

Johnson argues those two instances of perjury "irreparably prejudiced" his case. According to Johnson, those false statements were material to his case because they gave credence to alleged conversations Witt claimed she had with Johnson. Furthermore, the Government's decision not to correct Witt's false statements "conveyed to the jury that the Government vouched for her credibility" and that "the false statement exculpating Jones of the shooting was material and should have been included by Johnson in the affidavit he drafted[,] and the state court judge relied upon to issue the search warrant for Jone's car." *Id.* at 11.

The Government argues there is no legitimate basis to find that Witt committed perjury during the trial or that her testimony would justify a new trial. The Government contends that Witt "testified that she had spoken with defendant Johnson over the telephone at issue in this case, 786-530-8005, and that he had hung up on her." ECF No. [109] at 6. According to the Government, "[t]hese and other statements [Witt made,] corroborated by the telephone records admitted in this case, suggested very strongly that she was truthful in her testimony, which in any event was for the jury to decide." *Id.* Because Witt's credibility is a jury question, and because the Government believes the jury judged Witt's credibility correctly, it maintains that no new trial is necessary. *See id.*

As the Court has previously determined in its Order on Motion to Dismiss Indictment With Prejudice, ECF No. [92], the Government did not clearly and knowingly elicit perjured testimony, nor has Johnson convincingly established that Jessica Witt provided perjurious testimony during the trial.

Johnson insists Witt's testimony that Jones did not shoot her constitutes perjury because Witt had previously admitted that she did not know who shot her. However, Witt's testimony that Jones did not shoot her was not necessarily intentionally false, even if potentially inconsistent with other statements Witt previously made in the *Jones* case. Johnson omits the fact that when asked at the hospital whether Eugene Jones shot her, Witt responded by stating that "He [Jones] would never."3 Johnson also ignores the text messages Witt repeatedly sent to him, claiming Johnson was investigating the wrong person. Therefore, Witt has maintained from her time at the hospital until her testimony on July 12, 2025, that she did not believe Jones shot her. The fact that Witt did not know who the shooter was does not necessarily undermine her testimony that she believed Jones was not the shooter. Therefore, her statements at trial did not clearly amount to perjury. *See United States v. McNair*, 605 F.3d 1152, 1209 (11th Cir. 2010) ("Perjury is defined as testimony 'given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory.'") (quoting *United States v. Ellisor*, 522 F.3d 1255, 1277 n.34 (11th Cir. 2008)).

While the credibility of Witt's testimony was arguably in doubt during the trial, given the evidence indicating Witt did not remember the shooting, Johnson's evidence is not so convincing that the Court finds it appropriate to remove the question of credibility from the province of the jury and order a new trial. *See Martinez*, 763 F.2d at 1312-13 (explaining that when considering whether to grant a motion for a new trial, "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable."); *Witt*, 43 F.4th

at 1194 ("[T]o warrant a new trial, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.").

Moreover, defense counsel thoroughly cross-examined Witt and attempted to impeach her testimony regarding the alleged inconsistencies in her prior statements. Therefore, the Court is unconvinced that Johnson was prejudiced by Witt's alleged perjury, where the "jury had the information it needed to make an informed decision as to the witness's credibility." *United States v. McNair*, 605 F.3d 1152, 1209 (11th Cir. 2010); *United States v. Calderon*, 127 F.3d 1314, 1315 (11th Cir. 1997) ("[C]redibility determinations are the exclusive province of the jury."). Consequently, the Court rejects Johnson's final basis for a new trial as well.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Johnson's Motion for Judgment of Acquittal, **ECF No. [106]**, is **GRANTED in part** and **DENIED in part**.

   a. Johnson's request for Judgment of Acquittal as to **Count II** is **GRANTED**.

   b. Johnson's request for Judgment of Acquittal as to **Count III** and **Count IV** is **DENIED**.

2. Johnson's Motion for New Trial, **ECF No. [107]**, is **DENIED**.

3. This case shall proceed to sentencing on **Count III** and **Count IV** on **October 20, 2025,** as scheduled.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 15, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record